IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELDON GOERINGER and<br>LETA SUE GOERINGER,<br><br>                Plaintiffs,<br><br>v.<br><br>SUN LIFE ASSURANCE COMPANY OF<br>CANADA,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)      Case No. CIV-11-409-L<br>)<br>)<br>)<br>)<br>) |

## O R D E R

Plaintiffs Eldon Goeringer and Leta Sue Goeringer filed this complaint

pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"),

29 U.S.C. § 1132(a), alleging that defendant Sun Life Assurance Company of

Canada wrongfully denied their claim for accidental death benefits.  The parties

agreed that this case may be submitted to the court on the administrative record

and simultaneously filed opening and reply briefs.  Having considered the

administrative record (cited as "AR __ ") and the parties' briefs on the merits, the

court finds that the decision denying plaintiffs' claim for accidental death benefits

should be affirmed, for the reasons stated below.

Plaintiffs' son, Eugene Allen Goeringer, was employed by Warren CAT of Oklahoma City, Oklahoma, a division of Warren Equipment Company of Midland, Texas, as a field service technician.  AR 1.  A policy insuring Warren Equipment Company's employee benefit plan was issued by defendant, Sun Life Assurance Company of Canada ("Sun Life").  AR 96.  In addition to disability coverage, the policy provided Basic Life and Accidental Death and Dismemberment coverage as well as Employee Optional Life and Accidental Death and Dismemberment coverage.  AR 96.  Mr. Goeringer elected three times his annual earnings of optional accidental health coverage, in addition to the basic accidental death benefits provided by his employer.  AR 13.  Mr. Goeringer designated his parents, the plaintiffs herein, as the beneficiaries of his accidental death insurance coverage.  AR 13, 14.  It is undisputed that the policy provided Sun Life with "entire discretionary authority to make all final determinations regarding claims for benefits" including, but not limited to, "the determination of eligibility for benefits. . . and the amount of any benefits due, and to construe the terms" of the policy.  AR 163.

According to the Piedmont Police Department Incident Report, Mr. Goeringer was found dead in the garage of his Piedmont, Oklahoma residence on

December 10, 2009.  AR 19, 37.[1]  The reporting officer stated in the Incident

Report as follows:

> . . . Upon my arrival, I observed a white male subject, later identified as
> Eugene Goeringer, sitting in a red Ford pickup truck, in the driver's seat.  I
> then made contact with Sarah Baker, Goeringer's sister, who was in the
> driveway.  Baker said that she arrived at Goeringer's residence after
> receiving a call from his company who has not heard from him.  Baker said
> that she had to use her house key to enter the locked residence.  Baker
> discovered Goeringer in the garage.
>
> Jim Delbridge, Investigator from the Office of the Chief Medical Examiner,
> was called to the scene.  During the investigation it was determined that
> Goeringer's pickup ignition was in the "on" position and the battery was
> dead.  The hood of the truck was open and the engine was cool.  Goeringer
> was found with the garage door in the down (closed position.)  There was
> two Styrofoam cups with what appeared to be Crown Royal liquor in them.
> One was located in the bed of the pickup and the other was in the cab of the
> truck in a cup holder.  Goeringer was only wearing gray insulated long johns.
> I observed that the residence was very clean.  All door jams were in good
> condition along with the windows. . . .

The record reflects that Mr. Goeringer's amended death certificate identifies

the immediate cause of his death as "acute carbon monoxide intoxication."  AR 4.

Another significant condition contributing to the death is stated as "acute ethanol

intoxication."  Id.  The death certificate identifies "Accident" as the manner of

---

[1]     The Piedmont Police Department Incident Report [AR 19] states that the responding
officer "received a call reference an unresponsive male in his garage[.]" In a later interview, Officer Markel
Sterling stated that he responded to Mr. Goeringer's home on December 10, 2009 and "the reason for the
12/8/09 date [on the Incident Report] was that was the last time any one had any communication with
him."  Record of Telephone Conversation, AR 37.

death.  Id.  The Report of Investigation by Medical Examiner states the probable

cause of death as "acute carbon monoxide intoxication" and "acute ethanol

intoxication" is identified under the heading "Other Significant Medical

Conditions[.]" AR 21.  The manner of death is noted as "Accident."  Id.  According

to The Report of Laboratory Analysis of the Board of Medicolegal Investigations

Office of the Chief Medical Examiner, Mr. Goeringer's blood alcohol level was

.17%.  AR 22.

On or about January 15, 2010, plaintiffs submitted timely claims to Sun Life

for life insurance benefits and accidental death benefits under the policy.  AR 5-12.

On or about February 19, 2010, Sun Life notified Mr. Goeringer's employer,

Warren Equipment Company, that it was paying Mr. Goeringer's life insurance

benefits, but was continuing to review the claim for accidental death benefits.  AR

33.

In letters dated May 14, 2010, Sun Life advised the plaintiffs that it was

denying the accidental death benefit claims pursuant to the terms of the policy.

The denial letters, AR 43-48, quote the following policy provisions, taken from

Section IV of the Benefit Provisions section regarding Employee Accidental Death

and Dismemberment Insurance (see AR 131, 133):

If Sun Life receives Notice and Proof of Claim that an Employee: . . .

– sustains an Accidental Bodily Injury while insured, which results in loss of
life, sight or limb within 365 days of the date of that injury; . . .

4

Sun Life will pay, subject to the Exclusions, the following percentage of Accidental Death and Dismemberment Insurance shown in Section I, Schedule of Benefits that was in force on the date of the Accidental Bodily Injury for the following losses:

Life ....................................................................................100%

\*        \*        \*

**Exclusions**

No Accidental Death or Accidental Dismemberment payment will be made for a loss which is due to or results from: . . .

– intentionally self-inflicted injuries. [. . .]

– the Employee's operation of any motorized vehicle while intoxicated. Intoxicated means the minimum blood alcohol level required to be considered operating an automobile under the influence of alcohol in the jurisdiction where the accident occurred.  For the purposes of this Exclusion, "Motorized Vehicle" includes, but is not limited to, automobiles, motorcycles, boats and snowmobiles.

The denial letters further state that it is illegal to operate a motor vehicle in

Oklahoma with a blood alcohol level of .08 or greater.  AR 43, 46.

Plaintiffs made a timely request for administrative review of the denial of

accidental death benefits.  AR 50-54.  On review, Sun Life refused to alter its

decision that accidental death insurance benefits were not payable under the

terms of the policy. AR 77-83.  This lawsuit followed.

Where, as here, the plan grants a plan administrator discretion in determining the grant of benefits under the plan, the court must uphold the decision of the administrator unless the court finds that the determination was arbitrary and capricious.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113-15 (1989).  In applying the arbitrary and capricious standard, the court will uphold the decision so long as it is predicated on a reasoned basis.  Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999).  There is no requirement that the basis relied upon by the claims administrator be the only logical one or even the best one.  Id.; Nance v. Sun Life Assurance Co. of Canada, 294 F.3d 1263, 1269 (10th Cir. 2002).  The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end."  Kimber, 196 F.3d at 1098 (citation omitted).

A lack of substantial evidence may indicate an arbitrary and capricious decision.  Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir. 2002).  Substantial evidence is of the sort that a reasonable mind might accept as adequate to support a conclusion.  Id.  Substantial evidence requires more than a scintilla, but less than a preponderance.  Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992) (citation omitted).  Substantiality of the evidence is based upon the administrative record as a whole.  Caldwell, 287 F.3d

at 1282.  The administrator's decision will be upheld "unless it is not grounded on

*any* reasonable basis." Kimber, 196 F.3d at 1098 (citations omitted).

It is undisputed that Sun Life determines eligibility under the plan and pays

benefits under the plan.  This dual role creates a conflict of interest.  Metropolitan

Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008).  Following Glenn, the Tenth

Circuit has stated that all conflicts of interest are weighed by the court as a factor

in its determination of whether the benefit denial was arbitrary and capricious.

Hancock v. Metropolitan Life Ins. Co., 590 F.3d 1141, 1155 (10th Cir. 2009).

According to the Tenth Circuit, a conflict of interest affects the outcome of the case

"at the margin," when the court "waver[s] between affirmance and reversal."  Id.

Mindful of the appropriate standard of review, the court finds that Sun Life's

decision to deny plaintiffs' claim for accidental death benefits in this case does not

indicate a likelihood that Sun Life's dual role affected its denial decision.  Because

Sun Life's decision was amply supported by substantial evidence in the

administrative record, the court agrees with Sun Life that this is a case in which the

conflict of interest is not a significant factor.

Sun Life argues that Mr. Goeringer's death is excluded from coverage under

the policy because it was due to his operation of a motorized vehicle while

intoxicated.  As for its decision that Mr. Goeringer was operating a motor vehicle,

Sun Life has pointed to facts in the record indicating that Mr. Goeringer's body was

found in the driver's seat of his truck (AR 19), the truck's battery was dead and the ignition to the vehicle was in the "on" position (AR 19).  Sun Life decided that Mr. Goeringer was operating the truck at the time of his death based on the Medical Examiner's conclusion that the cause of death was due to acute carbon monoxide intoxication, and the fact that the door to the garage where the truck was located was in the closed position.

As for its finding that Mr. Goeringer was intoxicated under the terms of the policy, Sun Life relies on the language of the policy itself which defines the term "intoxication" as "the minimum blood alcohol level required to be considered operating an automobile under the influence of alcohol in the jurisdiction where the accident occurred."  AR 133.  Citing 47 O.S. § 11-902(a)(1), Sun Life maintains that, under Oklahoma law, a person is driving while intoxicated at a blood alcohol level of .08.  Since the administrative record indicates that Mr. Goeringer's blood alcohol level was determined to be above this level, at .17%, and the Medical Examiner further identified "acute ethanol intoxication" as a significant medical condition which led to Mr. Goeringer's death, Sun Life argues that its conclusions in this regard are also  supported by substantial evidence.

Sun Life also determined that accidental death benefits were not payable under the policy because the death was excluded from coverage due to "intentionally self-inflicted injuries."  AR 44, 47.  Based upon the information it had

received, and the words of the policy, Sun Life concluded that: "The injuries

resulting in Mr. Goeringer's death were reasonably foreseeable and were the

natural and probable result of conduct knowingly undertaken and therefore Mr.

Goeringer's death was not accidental.  The injuries resulting in Mr. Goeringer's

death were self-inflicted."  Id.

In reviewing the reasonableness of Sun Life's decision, the court has

carefully considered the arguments and contentions of the plaintiffs, however, the

court finds that they are insufficient to justify overturning Sun Life's denial decision,

given the applicable standard of review.  Plaintiffs submit that Sun Life's denial of

accidental death benefits based on its determination that Mr. Goeringer was

operating a motor vehicle while intoxicated was arbitrary and capricious and an

abuse of discretion.[2]  Plaintiffs assert that the term "operation" as used in the policy

exclusion is not defined, and thus creates an  ambiguity which should be construed

against Sun Life, the party drafting the policy language.  Plaintiffs argue that "a

reasonable interpretation of the phrase 'operation of a motorized vehicle while

intoxicated' would be limited to use of a motorized vehicle related to the

transportation nature of the vehicle." Plaintiffs' Reply Brief, Doc. No. 20, p. 2.

However, the court is here concerned only with whether Sun Life's interpretation of

the policy language was reasonable.  As stated, there is no requirement Sun Life's

---

[2]        In the Tenth Circuit, the terms "arbitrary and capricious" and "abuse of discretion" are
interchangeable in this context.  Weber v. GE Group Life Assur. Co., 541 F.3d 1010 n. 10 (10th Cir. 2008)
(citation omitted).

decision be the only logical or even the best one – only that it is not an arbitrary and capricious one.  In considering Sun Life's interpretation of the term "operation" used in the policy exclusion, the court cannot say that it was unreasonable for Sun Life to decide that the term "operate" should be given its plain and ordinary meaning.  AR 80.  Unlike the term "intoxicated" in the policy, the term "operation" is not further defined nor does it  borrow for its definition from another identified source.  Sun Life stated in its review letter upholding its initial denial of accidental death benefits that the American Heritage Dictionary (3 Ed. 1992) 1268, defines "operate" as: "To control the functioning of; run."  AR 80.  The Oxford English Dictionary (2d Ed. 1989) is quoted as defining the term "operate" as follows: "control the functioning of (a machine, process, or system)[.]" Id.  Clearly, the term "operation" is quite broad.  While plaintiffs have argued for a more restrictive definition of "operation" under Oklahoma law, the court finds that plaintiffs' arguments in this connection are not ultimately persuasive, given the arbitrary and capricious standard under which Sun Life's decision must be examined. Furthermore, as stated in its reply brief, Sun Life asserts that the policy's exclusion based on "operation of any motorized vehicle while intoxicated" does not incorporate Oklahoma's definition of operating a motor vehicle while intoxicated, it only incorporates the minimum blood alcohol level under Oklahoma law to be

considered operating a motor vehicle under the influence of alcohol.  The court cannot say that Sun Life's interpretation of the policy exclusion is unreasonable.

Plaintiffs' remaining attempts to undermine the denial are speculative and rely upon scenarios that are not present in the administrative record in this case. The court's review is limited to the administrative record, and "[a]n administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it."  Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 381 (10th Cir. 1992).

The court concludes that the record clearly includes substantial evidence that Mr. Goeringer's death, though certainly tragic, was the result of his operation of his truck while intoxicated.  In light of this conclusion, the court need not determine whether Sun Life properly applied the exclusion for "intentionally self-inflicted injuries."[3]  However, were the court to consider the reasonableness of this conclusion under the appropriate standard of review, the court would find that Sun Life's decision to apply this exclusion is also supported by substantial evidence in the administrative record and was not arbitrary and capricious, or "irrational," as argued by the plaintiffs.  As noted by Sun Life in its review letter upholding its initial denial of accidental death benefits,

---

[3]      It is not disputed that Sun Life has not asserted suicide as a basis for denial of the claim, although the policy does contain a suicide exclusion.  AR 133.

Mr. Goeringer's actions do not meet the definition of accidental bodily injury as defined in the policy.  Moreover, even if his injury did meet this definition, his actions, specifically turning the key of his vehicle so that it started while in an enclosed garage, fall under two exclusions in the Group Policy barring payment due to self-inflicted injuries and the operation of a motor vehicle while intoxicated.  Consequently, no Accidental Death insurance benefits are payable.

AR 83.

The court cannot say that Sun Life's decision to deny accidental death benefits was not grounded on *any* reasonable basis.  Having thoroughly reviewed the entire administrative record, the court concludes that Sun Life's decision denying plaintiffs' claim for accidental death benefits should be upheld.

Accordingly, for the above stated reasons, Sun Life's decision denying plaintiffs' claim for accidental death benefits should be and is hereby **AFFIRMED.** Judgment shall issue on a separate document in accordance with the Federal Rules of Civil Procedure.

It is so ordered this 6th day of February, 2012.

_Tim Leonard_
TIM LEONARD
United States District Judge